Richardson, J.,
delivered the opinion of the court:
The claimants rely, as the primary foundation of their demand, upon the following provision of the treaty of 1856 (11 Stat. L., 704):
“Article 18. The United States shall protect the Creeks and Seminóles from domestic strife, from hostile invasion, and from agg'ression by other Indians and white persons, not subject to their jurisdiction and laws; and for all injuries resulting from such invasion or aggression full indemnity is hereby guaranteed to the party or parties injured out of the Treasury of the United States, upon the same principle and according to the same rules upon which white persons are entitled to indemnity for injuries or aggression upon them, committed by Indians.”
They contend, that although the treaty relations of the Creek Nation with the United States were unsettled by the nation joining the public enemies of this country, and entering into a treaty with the Confederate States, yet that the claimants, individual members of the tribe, remained loyal to the Union, and suffered great losses and damages on account of it, and that the treaty of 1866 reaffirmed the obligations of the United States contained in the eighteenth article of the treaty of 1856, and provided for a full indemnity and payment for their losses.
*679 In our opinion the construction of the two treaties taken together and the liability of the United States thereunder as urged by the claimants are untenable. The course of proceedings taken by the Commissioner of Indian Affairs and the Secretary of the Interior in relation thereto were in strict conformity with the treaty obligations, and the claimants, having received each his proportion according to his losses, of the money awarded for that purpose, they are entitled to no more.
It is true that the twelfth article of the treaty of 1866 does •declare that—
“The United States reaffirms and reassumes all obligations of treaty stipulations with the Creek Nation entered into before the treaty of said Creek Nation with the so-called Confederate States, July 10,1861, not inconsistent herewith.”
But the effect of that provision was clearly to renew the former treaty from that date, and nothing more. It would be an unreasonable and unjustifiable interpretation to put upon it that the United States agreed to be responsible for all obligations on their part contained in the treaty during the time the Creek Nation was, with other public enemies, at war with them, and yet, while making a new treaty, they provided the ways and means of settling such obligations only in part, as contended by the claimants.
The eleventh article of the treaty of 1866 expressly declares that—
“The stipulations of this treaty are to be in full settlement of all claims of said Creek Nation for damages and losses of every kind growing out of the late rebellion.”
It is urged by the claimants that this provision applies only to national claims, while their demands are individual and personal. But that position is not warranted by the law or facts of the case. The claims of individual members who bring this action were claims of the nation, within the rules of international law (Great Western Insurance Co. Case 206 ante). Moreover, their payment as agreed upon was provided for by the treaty itself.
By the later treaty the nation sold one-half of its lands for $975,168 to the United States, who agreed to pay therefor $100,000 “ to soldiers that enlisted in the Federal Army, and the loyal refugee Indians and freedmen who were driven from their homes by the rebel forces, to reimburse them in proportion *680 to tlieir respective losses,” and the balance for the benefit of the whole tribe, as set out in article 3.
The claimants are the very persons to whom, as they allege, said $100,000 was payable. But they urge that they are entitled to some $1,800,000 more under the provisions of the fourth article of the treaty, which is as follows:
“Article 4. Immediately after the ratification of this treaty the United States agree to ascertain the amount due the respective soldiers who enlisted in the Federal Army, loyal refugee Indians and freedmen, in proportion to their several losses, and to pay the amount awarded each, in the following manner, to wit:
“A census of the Creeks shall be taken by the agent of the United States for said nation under the direction of the Secretary of the Interior, and a roll of the names of all soldiers that enlisted in the Federal Army, loyal refugee Indians, and freedmen, be made by him.
“The superintendent of Indian affairs for the southern superintendency and the agent of the United States for the Creek Nation shall proceed to investigate and determine from said roll the amounts due the respective refugee Indians, and shall transmit to the Commissioner of Indian Affairs for his approval, and that of the Secretary of the Interior, their awards, together with the reasons therefor.
“ In case the awards so made shall be duly approved, said awards shall be paid from the proceeds of the sale of said lands within one year from the ratification of this treats’-, or so soon as said amount of one hundred thousand ($100,000) dollars can be raised from the sale of said land to other Indians.”
The United States, by the Commissioner of Indian Affairs and the Secretary of the Interior, proceeded to ascertain the amount due the individuals in proportion to their losses as provided in that article. They first ascertained the amount of losses of each one, and finding the aggregate to be some $1,900,-000, while the amount due them all by the provisions of the treaty was only $100,000, they awarded and paid to them their respective shares of said latter sum in proportion to their several losses. This was in exact conformity to the terms of the treaty.
Theu amount due the respective soldiers” was not the whole $1,900,000 of their losses, a sum nearly twice as large as that, for which the United States were to give for the lands out of which payment was to be made, but was the $100,000 which was set aside and appropriated for that purpose, and was to be *681 paid so soon as said amount could be raised from the sale of said lands.- There is no express agreement to be found in the •treaty to pay any more than that sum, and even that was not to be paid until it could be raised from the sale of lands. The taking an account of the actual losses of individuals under the circumstances, raises no implied promise to pay the whole, because the purpose was, as declared, to ascertain the amount due to each one in proportion to his losses, thereby implying that they might not be paid to the full extent of the losses.
We have before us the letter of the Commissioner of Indian Affairs to the Secretary of the Interior of May 26,1870, referred to in the petition and made part thereof, and the reply of the Secretary thereto under date of September 5, 1870, as well as a letter from the Acting Commissioner of Indian'Affairs to the Secretary of the Interior of February, 1879, all of which take the ground that the claimants are entitled under the treaties to no more than the $100,000 which they have received. In that conclusion we entirely concur.
The demurrer is sustained, and the clerk of the court will certify a copy of the findings, conclusion of law, and this opinion to thb Interior Department for its guidance and action as provided by law.